# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

ANTHONY HARGRAVES and
JUNE HARGRAVES

      Plaintiffs,

v.                                    Case No: 1:23-cv-482 -JB-M

CONTINENTAL AEROSPACE
TECHNOLOGIES, INC.,

      Defendant.

---

DIANE B. WILLIAMS, individually and
as personal representative of the Estate of
William T. Meehan, deceased,

      Plaintiff,

v.                                    Case No: 1:24-cv-14
                                          (Consolidated with No. 1:23-cv-482-JB-M)

CONTINENTAL AEROSPACE
TECHNOLOGIES, INC.,

      Defendant.

## AMENDED COMPLAINT

    **COME NOW** Plaintiffs ANTHONY HARGRAVES and JUNE HARGRAVES and DIANE B. WILLIAMS, individually and as personal representative of the Estate of William T. Meehan, deceased, and bring their Amended Complaint against Defendant CONTINENTAL AEROSPACE TECHNOLOGIES, INC., formerly doing business as CONTINENTAL MOTORS, INC., and show unto the Court the following.

**Preliminary Statement**

1. This action arises from an aircraft crash and is brought pursuant to Alabama's common law third-party spoliation doctrine which affords litigants a cause of action against an entity that destroys evidence essential to pursuit of a claim against another. *See, e.g., Imperial Aluminum-Scottsboro, LLC v. Taylor*, 295 So. 3d 51 (Ala. 2019); *Smith v. Atkinson*, 771 So. 2d 429 (Ala. 2000).

2. As set forth in more detail below, Plaintiffs aver that Defendant destroyed parts of the aircraft wreckage that it had been advised to preserve, that it volunteered to preserve, and that it had a legal obligation to preserve, that Defendant had actual knowledge of pending or potential litigation arising from the aircraft accident, and that the evidence Defendant destroyed was essential to claims for personal injury, wrongful death, and loss of consortium that Plaintiffs could have brought against entities other than the Defendant whose acts or omissions caused the aircraft accident.

3. As a result of Defendant's spoliation of crucial, probative evidence, Plaintiffs are now unable to pursue claims against parties that were responsible for the plane crash at issue; therefore, Defendant, as the spoliator of essential evidence, is liable for the full amount of Plaintiffs' damages as plead more fully below.

**The Parties**

4. Plaintiffs ANTHONY HARGRAVES and JUNE HARGRAVES are husband and wife and residents of the State of Florida.

5. Plaintiff DIANE B. WILLIAMS, individually and as personal representative of the Estate of William T. Meehan, deceased, is a resident of the State of Florida. Plaintiff's decedent, William T. Meehan, was Plaintiff's husband and was also a resident of the State of Florida.

6. Defendant CONTINENTAL AEROSPACE TECHNOLOGIES ("CAT"), was and is a corporation duly organized and existing under the laws of the State of Delaware, maintaining its principal place of business and headquarters in the State of Alabama.

### Jurisdiction, Venue and Service of Process

7. At all times relevant hereto, CAT maintained its principal place of business in the State of Alabama, it regularly and continually conducted and transacted business within the State of Alabama, and it committed acts in the State of Alabama which are causally related to the claims asserted herein. Therefore, this Court may exercise general and specific personal jurisdiction over this defendant.

8. CAT maintains its principal place of business in the Southern District of Alabama, and CAT's actions of destroying evidence occurred here; venue in this Court is therefore proper against CAT.

9. Plaintiffs respectfully submit that they believe that federal subject matter jurisdiction is lacking for the reasons set forth in their Motions to Remand and preserve their objections thereto. Plaintiffs, however, respect the Court's decision to the contrary which found jurisdiction to exist pursuant to 28 U.S.C. § 1442 (federal officer removal).

### Timeliness

10. A cause of action for third-party spoliation is subject to the same statute of limitations period as the underlying negligence claim, but it begins to run on the date when the Plaintiffs reasonably learned of the spoliation. *See, e.g.*, *Beasley v. Michaels Stores, Inc.*, No. 18-cv-07770, 2020 WL 10964605 (N.D. Ill. Nov. 24, 2020); *Skridla v. General Motors Co.*, 46 N.E.3d 945 (Ill. App. 2015).

11. When the underlying cause of action arises outside of the forum state, the law of the state where the spoliation occurred governs. *See Ex Parte US Bank National Association*, 148 So.3d 1060 (Ala. 2014) (finding that under the *lex loci* analysis the law that governs is the location where the last event giving rise to the right to sue occurred).

12. This action is timely because the State of Florida is the location of the aircraft crash and where Plaintiffs would have timely brought claims against entities other than Defendant but for Defendant destroying evidence, which prevented Plaintiffs from successfully pursuing such claims, and it provides for a four-year statute of limitations for personal injury claims and for a two-year statute of limitation for wrongful death and survivorship claims.

13. Defendant's spoliation of evidence occurred on or about January 4, or 5, 2023 and therefore, Plaintiffs' action is timely.

## The Defendant's Destruction of Evidence

14. On May 21, 2021, Anthony Hargraves was receiving flight instruction and evaluation from a certified flight instructor aboard a single engine Beech A36 aircraft federally registered as N125WC, and William Meehan was an occupant of said aircraft.

15. During the subject flight, the aircraft's engine experienced a total loss of power which is averred to have been caused by the malfunction of the subject engine's fuel manifold flow divider, fuel injectors, and/or fuel injector lines.

16. The aircraft impacted the ground in Lakeland, Florida and erupted in flames causing serious injuries, including but not limited to third degree burns over the majority of Mr. Hargrave's body resulting in permanent disfigurement, orthopedic and neurological injuries, and physical, mental, and emotional pain and suffering and trauma. Mr. Meehan was caused to suffer serious injuries, including but not limited to third degree burns over the majority of his body resulting in

physical, mental, and emotional pain and suffering and trauma and his ultimate death.

17. Following the subject crash, the NTSB assumed exclusive jurisdiction over the aircraft wreckage and the investigation with said authority vesting in the NTSB through federal statute and regulations.

18. As part of its official investigation, the NTSB has the authority to invite the participation of those manufacturers whose products are involved in an aviation accident. Participation is not mandatory. (See Ex. A NTSB Information and Guidance for Parties to NTSB Accident Investigations at § III).

19. NTSB party participation status "confers no rights or benefits" to participants and participation is strictly limited to providing technical assistance to the NTSB's fact-finding efforts. (Ex. A § III pg. 2 Information and Guidance for Parties to NTSB Accident and Incident Investigations and Certification of Party Representative).

20. The NTSB invited CAT as the manufacturer, designer, and seller of the subject aircraft's engine to be a party participant in the investigation of Plaintiffs' aircraft crash.

21. CAT accepted the NTSB's invitation and executed a "Certification of Party Representative" form. (Exhibit A).

22. On or about August 17, 2021, the NTSB instructed a non-party evidence custodian to deliver to CAT, among other things, the subject aircraft's manifold flow divider and injectors. The NTSB Evidence Control Form Chain of Custody discloses that the manifold flow divider and injectors were delivered to CAT to be "Retained in Bonded Storage Pending Direct NTSB Oversight" on or about August 19, 2021. (Ex. B NTSB Evidence Control Form).

23. On August 19, 2022, CAT voluntarily accepted custody of the subject manifold flow valve, injectors, and injector lines. (*Id*.)

24. On March 30, 2022, the NTSB coordinated a virtual video conference with CAT during which certain fuel system components, including the subject manifold flow divider and injectors were tested and examined.

25. The testing performed on the subject manifold flow divider and the injectors revealed that these components did not perform to or otherwise meet proper specification.

26. Approximately nine months later, on January 4, or 5, 2023, agents, servants, and employees of CAT, during routine cleaning of the area where the subject accident engine components were stored, without NTSB knowledge, consent, or permission, discarded the subject manifold flow divider, injectors, and injector lines. (Ex. C Memorandum for Record Dated March 15, 2023).

27. CAT's actions in performing routine cleaning of its facility and throwing Plaintiffs' evidence in the trash or otherwise destroying it were unrelated to any actions or duties of its limited status as an NTSB party participant, and said actions were performed in CAT's capacity as a private company performing company tasks.

28. At the time of the evidence destruction, CAT was the custodian of the evidence, it had acquiesced to the direction of the NTSB to preserve the wreckage, voluntarily agreed to preserve the evidence, and it had not been authorized or instructed by the NTSB to destroy the evidence.

### Third Party Spoliation Element One: The Defendant Spoliator Had Actual Knowledge of Pending or Potential Litigation

29. At the time the aforesaid evidence was destroyed and during the time in which CAT had possession of the evidence, it had actual knowledge of pending or potential litigation.

30. A pre-requisite to NTSB Party Participant status is to affirm to the NTSB the participant's actual knowledge that potential litigation can and/or will arise from the crash under

investigation.

31.	The Certification of Party Representative executed by CAT confirms its affirmative agreement and acknowledgement that:

> No party coordinator or representative may occupy a legal position or be a person who also represents claimants or insurers. I certify that my participation is not on behalf of either claimants or insurers, and that, although factual information obtained as a result of participating in the NTSB investigation may ultimately be used in litigation (at the appropriate time, and in a manner that is not inconsistent with the provisions of 49 C.F.R. 831.13 and 49 U.S.C § 1154), my participation is to assist the NTSB safety investigation and not for the purposes of preparing for litigation. I also certify that, after the NTSB Investigator-in-Charge (IIC) releases the parties and party participants from restrictions on dissemination of investigative information specified in 49 C.F.R. § 831.13, neither I nor my party's organization will in any way assert in civil litigation arising out of the accident any claim of privilege for information or records received as a result of my participation in the NTSB Investigation.

(Ex. A Certification of Party Representative).

32.	CAT's actual knowledge of potential litigation is further established as a result of its knowledge that the subject aircraft accident, learned as a result of the NTSB Preliminary report or its own investigation of the circumstances of the crash, occurred as a result of an engine malfunction and resulted in serious personal injury to Plaintiffs and the death of Mr. Meehan.

33.	CAT's actual knowledge of potential litigation is also established by the fact that its own testing of the engine components showed that the manifold flow divider, injectors, and/or injector lines did not operate properly and that they failed testing which established that fault for the crash could be ascribed to entities other than Plaintiffs.

34.	In addition to and independent of any requirement for the Defendant to have "actual knowledge" of pending or potential litigation, the circumstances of the spoliation having been committed while the NTSB had jurisdiction of the evidence justifies the satisfaction of the first element of third party spoliation because due to the exclusive jurisdiction over the evidence and

investigation vested in the NTSB, accident victims such as Plaintiffs have no, and in this case had no, standing nor authority to impose any requirements concerning the preservation of evidence and testing (whether destructive or non-destructive) on third parties, and Plaintiffs as accident victims and their representatives are not permitted to participate in the investigation.

35. In addition, the NTSB does not and did not disclose details of its investigation of aircraft accidents, including Plaintiffs' accident, until the investigation is concluded.

36. Therefore, in addition to having no authority to impose evidence preservation restrictions on the NTSB investigation of the subject crash, Plaintiffs have no knowledge of the developments of the investigation, including the location of where the NTSB transferred the evidence, and therefore could not notify said custodians and demand that they preserve the evidence or give them notice of pending or potential litigation.

**Third Party Spoliation Element Two: A Duty Was Imposed Upon the Defendant to Preserve Evidence Through a Voluntary Undertaking, an Agreement, or a Specific Request**

37. CAT agreed to participate in the NTSB's accident investigation of the subject crash and consented and agreed to accept possession and custody of the subject manifold flow divider, injectors, and injector lines and preserve these items.

38. The evidence control form which documents the chain of custody of the subject manifold flow divider, injectors, and injector lines shows that the NTSB directed the foregoing components to be transported to CAT for "Securing in Bonded Storage for Testing" and that CAT received the foregoing evidence "Retained in Bonded Storage Pending Direct NTSB Oversight." (Ex. B Evidence Control Form).

39. CAT did not have the authority to dispose of or otherwise discard the evidence it received because the evidence was under the exclusive jurisdiction of the NTSB and the NTSB had not relinquished jurisdiction of the evidence.

40. Therefore, at all times relevant to this matter, CAT was under an obligation to preserve the evidence as evidenced by its voluntary acceptance of the evidence to be secured in bonded storage, its agreement to the NTSB's request to receive and preserve the evidence, and through legal obligations imposed upon CAT due to the NTSB's jurisdictional control of the evidence.

### Third Party Spoliation Element Three: The Missing Evidence Was Vital to the Plaintiffs' Pending or Potential Action Against a Third Party.

41. CAT's actions in destroying the essential evidence of the engine's manifold flow divider, injectors, and injector lines, prevented the NTSB from reaching a determination for the engine's loss of power which caused this accident; therefore, Plaintiffs' investigation of the facts and/or cause of the engine malfunction could derive any benefit from the NTSB's efforts to identify the cause of the engine malfunction.

42. Following NTSB release of the wreckage and the end to the NTSB's exclusive jurisdiction over the wreckage, inspection and investigation of the remaining wreckage did not reveal any pre-impact anomaly in any of the components available for inspection that would have caused or contributed to the engine's loss of power.

43. The malfunction of the subject manifold flow divider, injector, and/or injector lines will cause the engine to lose power, and Plaintiffs aver that the most likely cause of the crash was a malfunction of the aircraft engine's fuel manifold flow divider, fuel injectors, and/or injector lines.

44. The subject manifold flow divider, injectors, and injector lines were, or should have been, inspected and maintained by maintenance facilities located in Florida called Aeromech, Inc. and Aircraft Engineering, Inc. These included 100-hour inspections and annual inspections, during which the integrity of the foregoing components would have been or should have been evaluated

9

and during which anomalies that could induce an engine failure would have or should have been identified and rectified.

45. The manifold flow divider, injectors, and injector lines are items of evidence essential to and vital to any and all claims that Plaintiffs could have brought against Aeromech, Inc. and/or Aircraft Engineering, Inc., and without said evidence, Plaintiffs are unable to inspect, test and identify how the components malfunctioned, how the inevitable malfunction of said components would have been ascertainable and corrected by maintainers and inspectors, and how any acts or omissions of the maintainers fell below the standard of care and caused the subject crash.

46. The manifold flow divider, injectors, and injector lines were supplied and/or overhauled by Tornado Alley Turbo, Inc., Aircraft Accessories of Oklahoma, Inc., and General Aviation Modifications, Inc. The manifold flow divider, injectors, and injector lines are items of evidence essential to and vital to any and all claims that Plaintiffs could have brought against Tornado Alley Turbo, Inc., Aircraft Accessories of Oklahoma, Inc., and General Aviation Modifications, Inc.

47. As a direct and proximate result of the actions of CAT in destroying the manifold flow divider, injectors, and injector lines, Plaintiffs are prevented from seeking a remedy against the maintainers, inspectors, overhaulers, and suppliers of the components which caused the subject crash.

48. Neither Plaintiff Anthony Hargraves nor Plaintiff's decedent are at fault or responsible for the subject crash, and both individuals acted prudently and within the appropriate standard of care at all times.

**Damages**

49. As a result of the subject crash, Anthony Hargraves suffered severe personal injuries, including but not limited to third degree burns over 95% of his body, orthopedic, respiratory, emotional, and neurological injuries, past and future pain and suffering, past and future medical bills, past and future lost earnings, and loss of enjoyment of life.

50. As a result of the subject crash and the aforesaid damages suffered by her husband, June Hargraves has suffered past and future loss of her husband's consortium and services.

51. As a result of the subject crash, Plaintiff's decedent suffered severe pre-death personal injuries, including but not limited to third degree burns over his body, orthopedic, respiratory, emotional, and neurological injuries, pain and suffering, ultimately resulting in his death and loss of future services and financial earnings.

52. As a result of the subject crash and the aforesaid damages suffered by her husband, Diane Williams has suffered past and future loss of her husband's consortium and services.

**COUNT I**

**SPOLIATION (NEGLIGENCE)**

53. Plaintiffs repeat, reiterate, and re-allege all allegations contained in paragraphs 1 through 49 as though fully set forth at length herein.

54. CAT assumed a duty to preserve evidence, consented to preserve evidence, and owed a non-delegable and legally imposed duty to preserve the evidence that it voluntarily agreed to accept, store, and preserve as evidenced by its receipt of the evidence from the NTSB.

55. Because the NTSB is a government body acting on behalf of United States Citizens and/or the federal government which acts on behalf of United States Citizens, including Plaintiffs, and because the NTSB held exclusive jurisdiction over the evidence, and Plaintiffs had no legally

cognizable right to demand its preservation or otherwise impose or recommend preservation thereof, the duties that CAT owed as custodian and to preserve the evidence inured to Plaintiffs.

56.  CAT had actual knowledge of potential or pending litigation arising from the subject crash as evidenced by, 1) CAT's signature on the Certification of Representative (Ex. A) which affirmed it would act in a specified manner if and when litigation arising from the air crash under investigation commenced, including but not limited to, refraining from using its party participant status to prepare for such litigation, refraining from involving insurers and company personal involved in litigation to be involved in the subject investigation, and refraining from asserting privilege in such litigation to matters learned in the subject investigation, 2) CAT's knowledge that the aircraft accident under investigation occurred due to an engine failure and by no fault of the occupants of the aircraft, and 3) by virtue of CAT's knowledge that the occupants of the aircraft had been severely injured and killed.

57.  CAT breached its duties in the following manners:

    a.    In its capacity as a private business, unrelated to its participation in the NTSB investigation, CAT through its employees when cleaning its facility in the secure area where parts are stored, inadvertently discarded and destroyed the subject manifold flow divider, injectors, and injector lines.

    b.    engaged in unauthorized destruction of the evidence;

    c.    destroyed the evidence without the knowledge, consent, or permission of the NTSB, plaintiffs, or any other entity having ownership rights or jurisdictional rights over the evidence;

    d.    failing to secure the evidence in a manner that would not protect it from inadvertent destruction;

  e. leaving the evidence in unsecured areas where it was at risk of being discarded by individuals unaware of its significance;

  g. failing to take reasonable measures to ensure that the evidence would not be destroyed;

  h. failing to maintain proper security and supervision over the premises where the evidence was stored;

  i. failing to implement adequate measures, guidelines, rules, protocols, and/or instructions applicable to the preservation of the evidence;

  j. permitting unauthorized and/or untrained individuals to access areas where the evidence was stored;

  k. failing to train and/or supervise individuals having access to areas wherein the evidence was stored and to not discard such evidence.

  l. for other reasons to be developed in the discovery of this matter.

58. As a direct and proximate result of the foregoing breaches, evidence essential and vital to lawsuits for personal injury that could have been filed in the State of Florida for damages against Aeromech, Inc., Aircraft Engineering, Inc., Tornado Alley Turbo, Inc., Aircraft Accessories of Oklahoma, and General Aviation Modifications, Inc. was destroyed by Defendant CAT, thus rendering Plaintiffs unable to meet the elements of potential causes of action against these entities and thereby depriving Plaintiffs of a remedy against these, and other entities.

59. As a direct and proximate cause of the destruction of evidence committed by CAT, Plaintiffs have no remedies against other tortfeasors, including but not limited to, Aeromech, Inc. Aircraft Engineering, Inc., Tornado Alley Turbo, Inc., Aircraft Accessories of Oklahoma, and General Aviation Modifications, Inc., for the injuries and damages they suffered as a result of the

accident including but not limited to significant personal injuries, thermal burns, permanent disfigurement, orthopedic, neurologic, and respiratory injuries, past and future pain and suffering, pre-impact fright and terror, fear of impending death, death, post-impact fright and terror, mental anguish, emotional distress, past and future medical expenses, past and future lost earnings and services, loss of consortium and loss of enjoyment of life, for which under the doctrine of third-party spoliation of evidence the defendant CAT is liable to the Plaintiffs with no negligence of the Plaintiffs contributing thereto.

WHEREFORE, Plaintiffs demand judgment against Defendant, CONTINENTAL MOTORS, INC., now doing business as CONTINENTAL AEROSPACE TECHNOLOGIES, INC., in an amount to be determined by a jury.

Respectfully submitted this 26th day of March, 2024.

/s/ W. Lee Gresham, III
W. Lee Gresham, III
Attorney for Plaintiffs

And

Bradley J. Stoll (*admitted pro hac vice*)
KATZMAN, LAMPERT & STOLL
121 North Wayne Ave. Suite 205
Wayne, PA 19087
Bstoll@klm-law.com
(610)686-9686

*Of Counsel:*
HENINGER GARRISON & DAVIS, LLC
2224 1st Avenue North
Birmingham, AL 35203
Telephone: 205.326.3336
Facsimile: 205.326.3332
Email: lee@hgdlawfirm.com

**JURY DEMAND - PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES OF THE COMPLAINT.**

                                                    */s/ W. Lee Gresham, III*
                                                    OF COUNSEL

## **CERTIFICATE OF SERVICE**

      I hereby certify that I have served a copy of the foregoing upon the following counsel of record, via the CM/ECF system on the 26th day of March, 2024.

Michael J. Schofield, Esq.
Jeremy C. Branning, Esq.
Stephen A. Luongo, Esq.
Clark Partington, Esq.
125 East Intendencia Street, 4th Floor
Pensacola, FL 32591

                                                    */s/ W. Lee Gresham, III*
                                                    W. Lee Gresham, III