IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANTHONY HARGRAVES, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 23-00482-JB-M |
| ) | |
| CONTINENTAL AEROSPACE TECHNOLOGIES, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |
| | |
| DIANE B. WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 24-00014-TFM-B |
| ) | |
| CONTINENTAL AEROSPACE TECHNOLOGIES, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

**ORDER**

This matter is before the Court on Defendant, Continental Aerospace Technologies, Inc.'s Motion to Dismiss. (Doc. 31). The Motion has been briefed and is ripe for resolution. Upon due consideration, the Court concludes that the Motion is due to be DENIED.

I.   BACKGROUND

This action arises out of an airplane crash in which the Plaintiff Anthony Hargraves was injured, and William Meehan was killed. Plaintiff Williams brings this action individually and as the personal representative of Mr. Meehan's estate. The operative Amended Complaint asserts

1

a single cause of action for third party spoliation under Alabama law. (Doc. 29) (the action "is brought pursuant to Alabama's common law third-party spoliation doctrine which affords litigants a cause of action against an entity that destroys evidence essential to pursuit of a claim against another. *See, e.g., Imperial Aluminum-Scottsboro, LLC v. Taylor*, 295 So. 3d 51 (Ala. 2019); *Smith v. Atkinson*, 771 So. 2d 429 (Ala. 2000).")).[1]

Plaintiffs allege the National Transportation Safety Board ("NTSB") assumed exclusive jurisdiction over the aircraft wreckage and investigation. Plaintiffs further allege, in pertinent part:

> As part of its official investigation, the NTSB has the authority to invite the participation of those manufacturers whose products are involved in an aviation accident. Participation is not mandatory.
>
> NTSB party participation status "confers no rights or benefits" to participants and participation is strictly limited to providing technical assistance to the NTSB's fact-finding efforts.
>
> The NTSB invited [Defendant] as the manufacturer, designer, and seller of the subject aircraft's engine to be a party participant in the investigation of Plaintiffs' aircraft crash.
>
> [Defendant] accepted the NTSB's invitation and executed a "Certification of Party Representative" form.
>
> On or about August 17, 2021, the NTSB instructed a non-party evidence custodian to deliver to [Defendant], among other things, the subject aircraft's manifold flow divider and injectors. The NTSB Evidence Control Form Chain of Custody discloses that the manifold flow divider and injectors were delivered to [Defendant] to be "Retained in Bonded Storage Pending Direct NTSB Oversight" on or about August 19, 2021.
>
> On August 19, 2022, [Defendant] voluntarily accepted custody of the subject manifold flow valve, injectors, and injector lines.

---

[1] Plaintiff Williams filed her operative Amended Complaint in civil action no. 24-00014-TFM-B, after that action was consolidated with the instant action. Defendant has attached the Williams Amended Complaint filed in 24-00014 to its Motion to Dismiss in the instant consolidated action. (Doc. 31-1). The operative Amended Complaint in this consolidated action (Doc. 29), for purposes of this Order, includes the consolidated claims of all Plaintiffs.

On March 30, 2022, the NTSB coordinated a virtual video conference with [Defendant] during which certain fuel system components, including the subject manifold flow divider and injectors were tested and examined.

The testing performed on the subject manifold flow divider and the injectors revealed that these components did not perform to or otherwise meet proper specification.

Approximately nine months later, on January 4, or 5, 2023, agents, servants, and employees of [Defendant], during routine cleaning of the area where the subject accident engine components were stored, without NTSB knowledge, consent, or permission, discarded the subject manifold flow divider, injectors, and injector lines.

[Defendant's] actions in performing routine cleaning of its facility and throwing Plaintiffs' evidence in the trash or otherwise destroying it were unrelated to any actions or duties of its limited status as an NTSB party participant, and said actions were performed in [Defendant's] capacity as a private company performing company tasks.

At the time of the evidence destruction, [Defendant] was the custodian of the evidence, it had acquiesced to the direction of the NTSB to preserve the wreckage, voluntarily agreed to preserve the evidence, and it had not been authorized or instructed by the NTSB to destroy the evidence.

At the time the aforesaid evidence was destroyed and during the time in which [Defendant] had possession of the evidence, it had actual knowledge of pending or potential litigation.

A pre-requisite to NTSB Party Participant status is to affirm to the NTSB the participant's actual knowledge that potential litigation can and/or will arise from the crash under investigation.

The Certification of Party Representative executed by [Defendant] confirms its affirmative agreement and acknowledgement that:

> No party coordinator or representative may occupy a legal position or be a person who also represents claimants or insurers. I certify that my participation is not on behalf of either claimants or insurers, and that, although factual information obtained as a result of participating in the NTSB investigation may ultimately be used in litigation (at the appropriate time, and in a manner that is not inconsistent with the provisions of 49 C.F.R. 831.13 and 49

3

U.S.C § 1154), my participation is to assist the NTSB safety investigation and not for the purposes of preparing for litigation. I also certify that, after the NTSB Investigator-in-Charge (IIC) releases the parties and party participants from restrictions on dissemination of investigative information specified in 49 C.F.R. § 831.13, neither I nor my party's organization will in any way assert in civil litigation arising out of the accident any claim of privilege for information or records received as a result of my participation in the NTSB Investigation.

[Defendant's] actual knowledge of potential litigation is further established as a result of its knowledge that the subject aircraft accident, learned as a result of the NTSB Preliminary report or its own investigation of the circumstances of the crash, occurred as a result of an engine malfunction and resulted in serious personal injury to Plaintiffs and the death of Mr. Meehan.

[Defendant's] actual knowledge of potential litigation is also established by the fact that its own testing of the engine components showed that the manifold flow divider, injectors, and/or injector lines did not operate properly and that they failed testing which established that fault for the crash could be ascribed to entities other than Plaintiffs.

In addition to and independent of any requirement for the Defendant to have "actual knowledge" of pending or potential litigation, the circumstances of the spoliation having been committed while the NTSB had jurisdiction of the evidence justifies the satisfaction of the first element of third party spoliation because due to the exclusive jurisdiction over the evidence and investigation vested in the NTSB, accident victims such as Plaintiffs have no, and in this case had no, standing nor authority to impose any requirements concerning the preservation of evidence and testing (whether destructive or non-destructive) on third parties, and Plaintiffs as accident victims and their representatives are not permitted to participate in the investigation.

In addition, the NTSB does not and did not disclose details of its investigation of aircraft accidents, including Plaintiffs' accident, until the investigation is concluded.

Therefore, in addition to having no authority to impose evidence preservation restrictions on the NTSB investigation of the subject crash, Plaintiffs have no knowledge of the developments of the investigation, including the location of where the NTSB transferred the evidence, and therefore could not notify said custodians and demand that they preserve the evidence or give them notice of pending or potential litigation.

> [Defendant] agreed to participate in the NTSB's accident investigation of the subject crash and consented and agreed to accept possession and custody of the subject manifold flow divider, injectors, and injector lines and preserve these items.
>
> The evidence control form which documents the chain of custody of the subject manifold flow divider, injectors, and injector lines shows that the NTSB directed the foregoing components to be transported to [Defendant] for "Securing in Bonded Storage for Testing" and that [Defendant] received the foregoing evidence "Retained in Bonded Storage Pending Direct NTSB Oversight." (Ex. B Evidence Control Form).
>
> [Defendant] did not have the authority to dispose of or otherwise discard the evidence it received because the evidence was under the exclusive jurisdiction of the NTSB and the NTSB had not relinquished jurisdiction of the evidence.
>
> Therefore, at all times relevant to this matter, [Defendant] was under an obligation to preserve the evidence as evidenced by its voluntary acceptance of the evidence to be secured in bonded storage, its agreement to the NTSB's request to receive and preserve the evidence, and through legal obligations imposed upon [Defendant] due to the NTSB's jurisdictional control of the evidence.

(Doc. 29).

## II.    STANDARD

A Rule 12(b)(1) motion challenges the Court's subject matter jurisdiction. *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). The party invoking jurisdiction bears the burden of proof. *Gilmore v. Day*, 125 F. Supp. 2d 468, 471 (M.D. Ala. 2000) (citing *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)).

In analyzing a Rule 12(b)(6) motion to dismiss, the Court accepts the facts pleaded as true and construes them in a light favorable to the non-moving party. *Quality Foods De Centro Am., S.A. v. Latin Am. Agribusiness*, 711 F.2d 989, 994-95 (11th Cir. 1983). All reasonable inferences are drawn in favor of the nonmovant. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002). Rule 8(a) requires a "'statement of circumstances, occurrences, and

events in support of the claim presented' and . . . not . . . a pleader's 'bare averment that he wants relief and is entitled to it.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007) (citations omitted). Although a complaint does not need "detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In *Ashcroft v. Iqbal*, the Supreme Court identified "two working principles" which underlie *Twombly*. 556 U.S. 662, 678 (2009). "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 556 U.S. at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. [] Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. [] But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (internal citations omitted).

### III.    ANALYSIS

Defendant moves for dismissal based on three alternative grounds. The Court concludes none are meritorious and that the Motion to Dismiss is due be DENIED for the following reasons.

First, Defendant contends Plaintiffs have failed to state a plausible claim of third-party spoliation under Alabama law. The elements of a third-party spoliation claim were articulated by the Alabama Supreme Court in *Smith v. Atkinson*, 771 So. 2d 429 (Ala. 2000). In addition to the standard negligence elements of duty, breach, proximate cause, and damage, "the plaintiff in a third-party spoliation case must also show: (1) that the defendant spoliator had actual knowledge of pending or potential litigation; (2) that a duty was imposed upon the defendant through a voluntary undertaking, an agreement, or a specific request; and (3) that the missing evidence was vital to the plaintiff's pending or potential action." *Smith*, 771 So. 2d at 432. Defendant argues Plaintiffs have failed to sufficiently plead the first and second additional elements noted in *Smith*, namely, that Plaintiffs failed to allege sufficient facts of Defendant's actual knowledge or Defendant's duty to preserve evidence.

The element of "actual knowledge" was clarified in *Killings v. Enterprise Leasing, Co.*, 9 So. 3d 1216 (Ala. 2008), in which the Alabama Supreme Court held "Alabama law requires only that the accused spoliator have 'actual knowledge of pending **or potential** litigation.'" 9 So. 3d at 1222 (citing *Smith*, 771 So.2d at 432) (emphasis in original)). *See also, Atlantic Specialty Ins. Co. v. Deere & Co., Inc.*, 2023 U.S. Dist. LEXIS 98244, *8 - 9 (N.D. Ala. June 6, 2023) (finding sufficient pleading of actual knowledge where plaintiff alleged defendant "knew or should have known of the potential litigation . . . given the nature and amount of loss and the obvious visual evidence of subcomponent malfunction which was swiftly spoliated before confirmation of the source of the deposit.").

Based on the reasons and arguments articulated by Plaintiffs, the Court concludes Plaintiffs' Amended Complaint sufficiently pleads Defendant's actual knowledge of potential

7

litigation.  (*See, e.g.*, Doc. 29 at paragraphs 30 through 33).  Defendant's attempt to distinguish *Killings* and *Atlantic Specialty* are unpersuasive.

The additional element of duty articulated in *Smith* was also addressed in *Killings*.  There, the Alabama Supreme Court held "a duty to preserve evidence arises when, '1) the third party voluntarily assumes the duty to preserve evidence; 2) the third party agrees with the plaintiff that it will preserve the evidence; or 3) the plaintiff makes a specific request to the third party to preserve the evidence.'"  *Killings*, 9 So. 3d at 1222.  Defendant argues that a duty arising under all three prongs in *Killings* requires an express request by or agreement with Plaintiffs.  However, the first prong based on a voluntary assumption of a duty does not appear to require such a request or agreement.  The Court finds Plaintiffs have sufficiently pled in the Amended Complaint a voluntary assumption of duty.  (*See, e.g.,* Doc. 29 at paragraphs 37 through 40 and 55).

The Court concludes Defendant's Motion to Dismiss under for failure to state a claim is due to be DENIED.

Defendant also moves for dismissal based on Plaintiffs' failure to join the NTSB, which Defendant contends is an indispensable party.   (Doc. 31 at PageID.567).  Plaintiffs advance a number of arguments in opposition.  Defendant does not address the issue in its Reply.  For the reasons stated in Plaintiffs' brief in opposition, the Court concludes that Defendant's Motion to Dismiss for failure to join the NTSB is due to be DENIED.

Finally, Defendant argues Plaintiff Williams' Amended Complaint should be dismissed because her claim in the underlying Florida action was defective and this Court, therefore, lacks subject-matter jurisdiction.  According to Defendant, Williams' amended third-party claim against it in Florida was "fatally defective" because it did not assert a claim for indemnity,

contribution, or subrogation related to the claims asserted against Williams by the Hargraves. (Doc. 31 at PageID.573 – 575). This, Defendant contends, ran afoul of Florida third-party practice rules. Defendant argues Williams should have filed a completely separate suit against it, and having failed to so, the Florida circuit court was without subject matter jurisdiction of Williams' third-party claim. Therefore, Defendant contends, this Court lack jurisdiction. (*See* Doc. 31 at PageID.575 ("because the Florida courts lack subject matter jurisdiction over the third-party claims asserted against [Defendant] and the applicable Florida statute of limitations has expired, this Court must dismiss this action under Rules 12(b)(1) and (6).")

Williams offers two arguments. First, she argues her claim in the underlying Florida action, against the maintenance entity, was not defective. The Court, though, understands Defendant to argue that Williams' claim against it was defective. Further, although Williams notes Florida Rule 1.180 allows a defendant to assert a third-party claim "that arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim," Defendant cites two cases from Florida district courts of appeal which hold that, before asserting a derivative third party claim under Rule 1.180, a defendant must first allege an indemnity, subrogation or contribution claim against the third-party defendant. Neither party has cited an opinion on this issue from the Florida Supreme Court. The Court is not persuaded by Williams' argument here.

However, the Court is persuaded by Williams' second argument. Citing *Smith*, Williams argues Alabama law does not require a third-party spoliation plaintiff to have filed a lawsuit against the underlying tortfeasor. (*Id.* at PageID.651 – 652). In *Smith*, the Alabama Supreme Court rejected the argument that "a plaintiff, in order to be able to file an action pursuing alleging spoliation of evidence against a third party, must first file an action pursuing the underlying cause

9

of action and be denied a recovery in that underlying action." 771 So. 2d at 434.  Rather, a third-party spoliation plaintiff may show "that, without the lost or destroyed evidence, a summary judgment would have been entered for the defendant in the underlying action."  *Id.*  In this regard, Williams also argues that the validity of the underlying tort claim is a question of proximate cause under Alabama law.  *Id.* at 432.[2]  Defendant did not respond to this argument in its Reply.  Based on the associated reasons set out in Williams' opposition, the Court finds that Defendant's Motion to Dismiss Williams' Amended Complaint is due DENIED.

## CONCLUSION

Defendant's Motion to Dismiss (Doc. 31) is DENIED.

**DONE and ORDERED** this 19th day of March, 2025.

/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] Defendant correctly notes the statute of limitations for the underlying wrongful death claim had expired by the time Williams filed the instant suit against it.  That limitations period, though, had not expired by the time Williams filed her claims in the Florida action against the underlying maintenance defendants and Defendant.

10